***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner W. Bain Jones, Jr. and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner W. Bain Jones, Jr. with some modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. RSKCO is the carrier on risk.
4. On or about May 7, 1998, plaintiff injured his low back in the course of and arising out of his employment with defendant-employer by specific traumatic incident, which injury was accepted as compensable pursuant to a Form 60 submitted June 25, 1998.
5. Plaintiff's average weekly wage at the time of injury was $379.18.
6. All medical reports relevant to the contested issues, one (1) set of eighty-six (86) pages and a supplement of thirty-four (34) pages, were stipulated into evidence and marked as Stipulated Exhibit 1.
7. Industrial Commission forms were stipulated into evidence and marked as Stipulated Exhibit 2.
8. Employment records from Yellow Freight System, Inc. were stipulated into evidence as Stipulated Exhibit 3.
9. Plaintiff's leave absence request and other documentation were stipulated into evidence as Stipulated Exhibit 4.
10. Plaintiff's attendance records were stipulated into evidence as Stipulated Exhibit 5.
11. Plaintiff's payroll information was stipulated into evidence as Stipulated Exhibit 6.
12. The issues before the undersigned are (i) whether plaintiff is entitled to additional compensation as result of the May 7, 1998 injury; (ii) whether plaintiff is entitled to additional medical treatment after November 22, 1999; (iii) whether defendants are entitled to a credit for overpayment of partial or total disability compensation; (iv) whether plaintiff refused suitable employment on March 30, 2000; (v) whether termination meets the Seagraves standards; (vi) whether plaintiff is entitled to attorney fees?
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of David Norris Dupuy, M.D., Nandlal C. Shah, M.D., Neal Stephen Taub, M.D., Karen A. DuBose, M.S.N., R.N.C.S., are OVERRULED. The objection to the admissibility of the testimony of Karen A. DuBose, M.S.N., R.N.C.S., is OVERRULED.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 41 years old and had worked for defendant since 1996 as a carton tech. This position involved unloading baled and unbaled "knockdowns," or "KD's," which are flattened cardboard cartons, to supply the product lines of the company with shipping cartons for their products.
2. Larger bales of KD's were lifted by forklift driving directly into the truck trailers parked for unloading at the dock doors. The forklift, due to the size of the loads placed in front, were driven backwards for safety. The driver was therefore required to drive while in a constant twisting of the torso, neck and head to see behind him. Smaller bales of cartons, weighing from 25 to 60 pounds, were stacked on pallets by hand and then transported by forklift. Often there would be unbaled cartons, which would involve periods of picking strewn cartons off the floor in a repetitive fashion and stacking them for transport. The job required frequent bending, twisting and reaching.
3. Plaintiff was initially treated for his compensable injury at Arrowood Medical Clinic and then, by referral, to various physicians at Charlotte Orthopedic Specialists. He was taken out of work for the periods of May 8, 1998 through May 14, 1998 and July 22, 1998 through October 27, 1998. He was paid temporary total disability payments for these periods, but at an incorrect rate, resulting in some overpayment.
4. Through 1999 and beyond, plaintiff worked with absences that were ascribed to Family and Medical Leave, and therefore uncompensated, when in fact they were due to the compensable back injury. All payments of temporary total or partial benefits were unilaterally ceased by defendants on October 27, 1998, when he was returned to work by Dr. David DuPuy of Charlotte Orthopedic Specialists (COS) with restrictions.
5. On December 30, 1998, Dr. DuPuy, who had been assigning plaintiff work restrictions, then released plaintiff to return to work with no restrictions and a three (3%) percent permanent partial disability to the back. There was no appointment made to follow up with Dr. DuPuy to ensure that plaintiff was successful at the full duty return to work and plaintiff was not instructed that he could return to Dr. DuPuy if he had further problems.
6. On February 4, 1999, plaintiff had a second opinion on the rating with Dr. N.C. Shah, a board certified physical medicine and rehabilitation specialist. Dr. Shah noted plaintiff's continuing problems and assigned him a five (5%) percent rating to the back. On March 19, 1999, plaintiff returned to see Dr. Shah, requesting treatment for his continuing low back pain and problems working.
7. Plaintiff requested authorization from the Industrial Commission for Dr. Shah, but none was forthcoming until July 8, 1999, by Order filed by Deputy Commissioner Amy Pfeiffer.
8. Dr. Shah understood plaintiff needed to earn wages to support his family and he did not take plaintiff out of work. Although Dr. Shah considered plaintiff's job tasks to be inappropriate for his medical condition, plaintiff refused to stop working. Instead, he wrote plaintiff excuses pursuant to the Family and Medical Leave Act, which would provide plaintiff with some ability to take short breaks from work to deal with his pain and then return. This practice was continued even after Dr. Shah was authorized as the treating physician. Though ordered by this Commission, defendants were not paying for Dr. Shah's treatment or prescriptions.
9. Dr. Shah retired from the practice of medicine on December 30, 1999, at which time he referred plaintiff to Dr. Neal Taub, also a physical medicine specialist.
10. Though this was a direct referral, plaintiff was unable to get approval for Dr. Taub from the insurance company until June 23, 2000.
11. Due to increasing anger and frustration towards the employer, in large part from his back pain and the way his worker's compensation claim was being handled, plaintiff took the initiative to contact the Employee Assistance Program and request a psychological referral.
12. Referral was made to a psychiatric nurse counselor, Karen DuBose, who took him out of work. The incapacity to earn wages due to the time out of work pursuant to Ms. DuBose's recommendation was a result of the compensable back injury and the anger and frustration generated by the injury and the employer and carrier's handling of the claim.
13. Plaintiff filed claims with the Equal Employment Opportunity Commission and the Labor Department (Retaliatory Employment Discrimination Act) based on what he perceived to be discriminatory treatment based on his injury and on his race.
14. On March 30, 2000, the parties settled those civil actions by agreements which included a resignation from the company by plaintiff. At the time of the agreement, plaintiff was still on psychological disability per Karen DuBose and was in fact receiving short-term disability benefits paid by the employer's disability carrier.
15. After the first evaluation with Dr. Taub on June 28, 2000, plaintiff was taken out of work.
16. Dr. Shah and Dr. Taub concur with Dr. DuPuy that the carton tech job had been too heavy for plaintiff's physical condition.
17. Plaintiff was returned to work by Dr. Taub on September 28, 2000 with restrictions of a 20 pound maximum lift.
18. No evidence was presented by defendants as to any suitable employment either offered or available.
19. Defendants are entitled to a credit for any overpayment of disability payments and for short-term disability payments.
20. Defendants have not defended this action without merit.
 ***********
Based on the foregoing stipulations, findings of fact, and conclusions of law, the Full
Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of plaintiff's injury, direction of treatment by defendants, uncontested Order by the Industrial Commission, Rules of the Industrial Commission regarding referral by treating physicians and actual consent by the insurance carrier, plaintiff was entitled to payment for medical treatment by Arrowood Clinic, Charlotte Orthopedic Specialists, Dr. N.C. Shah and Dr. Neal Taub. N.C. Gen. Stat. §97-2(19); N.C. Gen. Stat. § 97-25; North Carolina Industrial Commission Rule 407(4); and North Carolina Industrial Commission Rule (7).
2. Treatment and disability determinations by Karen DuBose, R.N., to whom plaintiff was referred by an agent of employer, are also compensable, as her treatment was causally related to the compensable injury and reasonably necessary to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
3. Plaintiff is entitled to received temporary total disability compensation as result of his compensable injury through September 28, 2000 when he was released by Dr. Taub, subject to any credit owed defendants. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-30; N.C. Gen. Stat. § 97-42.
4. Plaintiff is entitled to total or partial compensation for days in 1999 or forward designated as FMLA time off. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-30.
5. Defendants are entitled to a credit for any overpayments of total or partial compensation as well as short-term disability made during this period. N.C. Gen. Stat. § 97-42.
6. Defendants have not defended this action without merit. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay medical compensation for diagnostics, evaluation and treatment rendered by or recommended by Arrowood Clinic, Charlotte Orthopedic Specialists, Dr. N.C. Shah, Dr. Neal Taub, and Karen DuBose, R.N., including any reimbursement to plaintiff for amounts paid out of pocket, as well as any further treatment by Dr. Neal Taub reasonably necessary to effect a cure, give relief or which tends to lessen the period of disability for the compensable injury.
2. Defendants shall pay to plaintiff weekly compensation of $252.80 for temporary total disability compensation as result of his compensable injury through September 28, 2000 when he was released by Dr. Taub, including any time totally out of work pursuant to an excuse of any treating physician or provider, as well as partial disability for partial wage loss during any period in which work restrictions were assigned by any treating physician, with a credit to defendants for sums already paid pursuant to the Workers' Compensation Act or through employer's short term disability insurance carrier. Weekly payments shall continue at this rate until further order of the Industrial Commission. This is subject to an attorney's fee in Paragraph 3 below.
3. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff shall be paid as follows: twenty-five percent (25%) of all accrued compensation to the date of this AWARD. In regards to future compensation, plaintiff's counsel shall receive the equivalent to every fourth compensation check.
4. Defendants shall pay the costs.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER